# Staunton.

Virginia Iron, Coal and Coke Co. v. Kiser.

September 13, 1906.

Absent, Keith, P.

1. Appeal and Error—*Granting or Refusing Continuance—Review—Case at Bar.*—The granting or refusal of a continuance is always addressed to the sound discretion of the trial court, and to entitle a party to a reversal on the ground that a continuance was improperly granted or refused, it must be clearly shown that the court abused its discretion and that injury resulted to the complainant. In the case at bar the refusal of the trial court to grant a continuance because of the absence of one of defendant's counsel, was not reversible error as it does not appear that there was any mismanagement or mistake on the part of defendant's counsel who conducted the defense, or that any injury resulted to the defendant by reason of the absence of the absent counsel.

2. Negligence—*Damages for Personal Injuries—Proximate Cause.*—A defendant in an action to recover damages for a personal injury cannot be held liable therefor unless his neglect of some duty he owed the party injured was the proximate cause of the injury; and the requisites of proximate cause are, first, the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and, second, that such act or omission did produce it.

3. Master and Servant—*Injury of Servant—Duty of Master.*—A master is required to anticipate and guard against consequences injurious to his servant that may be reasonably expected to occur, but he is not compelled to foresee and provide against that which reasonable and prudent men would not expect to happen.

4. Master and Servant—*Injury to Servant—Negligence of Master—Evidence—Case at Bar.*—The negligence of a master cannot be inferred from the mere occurrence of an accident by which his servant is injured. That fact alone does not raise even a *prima*

*facie* presumption of negligence, and in an action against the master, the defendant's negligence is an affirmative fact to be established by the plaintiff. The evidence in such case must show more than a mere probability of negligence, and it is not sufficient that it is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of defendant's negligence. In the case at bar, which is an action for the death of plaintiffs's intestate by the fall of slate in a mine, the allegations and evidence as to how the accident occurred are too vague and indefinite to entitle the plaintiff to recover.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Cabell, Talley & Cabell, Bullitt & Kelly* and *John W. Chalkley,* for the plaintiff in error.

*C. T. Duncan* and *Kilgore, Alderson & Parsons,* for defendant in error.

Cardwell, J., delivered the opinion of the court.

This action was brought by the personal representative of Squire Adams, deceased, to recover damages for the death of his intestate, caused by the alleged negligence of the Virginia Iron, Coal and Coke Company, in whose service the decedent was at the time of his death.

Upon a trial of the cause, after the evidence on both sides was closed, the defendant company demurred to the evidence, and the plaintiff joined in the demurrer. Thereupon the jury assessed the plaintiff's damages at $3,000, subject to the opinion

of the court on the demurrer to the evidence, and the court rendered its judgment in favor of the plaintiff for the amount of damages ascertained by the jury. To this judgment a writ of error was awarded by one of the judges of this court.

When the case was called for trial in the Circuit Court a motion was made for a continuance on the ground of the absence of Mr. P. H. C. Cabell, of counsel for the defendant company, which motion was overruled, and this ruling is assigned as error.

It seems that Mr. Cabell appeared in the case as the general counsel, in Virginia and several other States, of the Travellers Insurance Company, and had associated with him for the defense Messrs. J. F. Bullitt and John W. Chalkley, as local attorneys; and the court being of opinion that the attorneys present were reasonably familiar with the facts of the case and with the issues which would arise on the trial, and therefore competent to conduct the trial on behalf of the defense, refused a continuance. It has been often repeated by this court, and it is the established rule everywhere, that the granting or refusal of a continuance is always addressed to the sound discretion of the trial court, and to entitle a party to a reversal on that ground it must be clearly shown that the court abused its discretion and that injury resulted to the party complaining from the abuse.

The defendant company has not pointed out in its petition for this writ of error, nor is there disclosed in the record, any mismanagement or mistake by the learned counsel who conducted the trial for the defense in the court below, or any injury that resulted to it by reason of the absence of Mr. Cabell; therefore there is no ground whatever upon which to rest this assignment of error.

The defendant company, before and at the time of the acci-

dent out of which this action arises, was engaged in operating a coal mine in Wise county, Virginia. The plaintiff's decedent, Squire Adams, was a boy seventeen years of age, and employed by the defendant company as a mule driver—that is, to haul with a mule the empty cars into and the loaded cars out of the mines, going through such entries and drive-ways into such rooms of the mines as he was directed, for the purpose of taking in empty cars and bringing out loaded ones. While in the performance of these duties, about one o'clock P. M. on the 12th day of November, 1904, he was crushed to death by a fall of slate between rooms 7 and 8 in the main entry to the mine, while coming out with perhaps his first load through that entry, but certainly with his first load after the dinner hour on that day, which was from twelve o'clock M. to one P. M. The entry where the accident occurred is shown to be about ten feet wide, and it was attempted to be secured by props along on each side of the track or haulway running through the entry, which props were placed from four to eight feet apart, lengthwise of the mine, and were in pairs—that is, one on each side of the track or haulway; and extending across the track from the top of one prop to the top of the other collar-beams were placed to support the roof of the mine and to prevent the fall of slate. The length of these collar-beams was about ten feet, the props upon which they rested being from six to eight inches in diameter, and the space between the props across the track or haulway from seven and one-half to eight and one-half feet wide. The track in this entry was originally laid with wooden rails, but about eight days before the accident to Adams these wooden rails were taken out and steel rails were laid in their stead.

No one saw the accident which caused the death of Adams, and when the mine foreman and others got to the place a few minutes after it occurred they found the front truck of the

loaded car off the track on the left side of the entry coming
out, the mule was hitched to the car and uninjured, and two
of the props on that side were leaning forward at an angle of
about forty-five degrees, the prop nearest to the mouth of the
mine (one of the two leaning) being dented as though it might
have been struck by the car. From this point back in the direc-
tion the car had come, for a distance of about twenty feet, there
was a heavy fall of slate reaching practically across the entry
and covering the track to a depth of several feet, beneath which
the dead body of Adams was afterwards found, on the left side
of the track, about eight feet in the rear of the car. One of the
collar-beams from the two leaning props was lying crosswise
on top of the loaded car; the other was lying lengthwise of the
car and on top of the other beam. There was a small amount
of slate on the rear end of the car, but none on the front end,
and the next collar-beam belonging to the next pair of props,
after passing the two leaning props, was found on or under the
slate, broken in two. On removing the slate a cap-board, eigh-
teen or twenty inches long, an inch to an inch and a quarter
thick at one end and cut down to a sharp or feather edge at the
other, was found on the left rail coming out, the feather edge
pointing in the direction from which the car had come, and
on the bottom side of this cap-board its entire length was the
imprint of the rail and the imprint of the car wheel on its top
side, presenting very clear proof that it had been run over by
the car while lying lengthwise on the left rail of the track. It
further appears that the track at the place of the accident was
not laid midway between the props, but that on the left side
coming out it was nearer the props than on the other side. Ac-
cording to the evidence the distance of the rail on the left side
coming out of the mine was not over eighteen inches, nor less
than fifteen inches, from the dented prop, and the car was

from five feet three inches to five feet eight inches wide at the top, measuring the rod that held it together, hanging out about twelve inches at the top or widest part over the rail, and the car had a slue of three or four inches; whereby, with the car on the track, and though it slued four inches to the left—which side of the track was elevated about one inch—there was yet left a space between the top or widest part of the car and the prop indented of something like two inches, viewing the evidence most favorably for the plaintiff, which was based upon measurements made after the accident.

It is the contention of the plaintiff that the death of his intestate was due to the negligence of the defendant company in not furnishing him a safe place in which to do the work assigned to him, specifying that the accident was due to one or more of four causes: First—The props supporting the collar-beams placed to prevent the fall of slate from the roof of the mine were too near the track on the left side coming out of the mine. Second—"Gob" was allowed to accumulate on the track, causing the derailment of the car being driven by the deceased. Third—The track was out of repair. Fourth—There was a cap-board on the track, which caused the derailment of the car.

Whether the car hit against the post upon which the dent spoken of was found before or after its front truck left the track, no one was able or attempted to tell. The position of the driver of one of these cars is on the rear end of the car, inside of the outer edge thereof, and if in passing along the car would clear the posts, that was all that was necessary, and the fact that the decedent was found eight feet from the rear end of his car, crushed to death by the slate that had fallen from the top of the mine, would, as it seems to us, clearly negative the idea that the striking of the dented post by the corner of the car caused the falling of this slate, as it necessarily had

fallen before the car reached the dented post, but just what caused it to fall the evidence fails utterly to disclose. There is not a suggestion that any of the props had been struck by the car before it reached the last one, where it stopped and with no slate upon it except a small quantity on its rear end.

The mine foreman and the dirt inspector on duty in the mine at the time of the accident were both introduced as witnesses for the plaintiff, and each testifies that the entry in which the accident occurred was in a safe condition; that it was suitably and safely propped; that the props were not too near the track; and that there was a clearance between the top of the car and the post having the dent in it of about six and one-half inches. One of these witnesses—the mine foreman—was in this entry on the Friday or Saturday before the accident, which occurred the following Monday, and the other—the dirt inspector—within three hours next preceding the accident, and both say that there was no more "gob" on the track than usual, and agree that the track was in good condition. No contention is made that the defendant company was negligent with respect to its duty to properly inspect its mine, and both of the witnesses to whom we have just referred say that they heard no complaint from anyone that the entry in which this accident happened was in an unsafe condition.

All the witnesses agree that the track at the point of the accident was higher (about one inch) on the left side coming out of the entry, at the point where the car left the track, and that naturally if the car when in motion slued at all, it would be to the lower side of the track and not to the higher side. Therefore, if we accept as true—as we must under the rule governing the consideration of the evidence—the statements made by the only other witness for the plaintiff, S. T. Adams, the father of the deceased, based upon measurements made after

the accident, after the car and mule had been removed, the entry cleared and props reset, there was, even if the car, when it got nearly opposite the post which appeared to be struck, slued *uphill* and as much as four inches (the most it is claimed it could have slued), there still would have been a clearance between the widest part of the car and the post of nearly two inches.

We have, then, the statements of this witness, not only inconsistent with but contradictory of the other two witnesses for the plaintiff, as to the situation where the accident occurred. According to the two witnesses the theory suggested by the other (Adams) as to how the accident was caused was a physical impossibility, and we know of no rule that requires the court to disregard the evidence of the two witnesses, and accept that of the one, merely because that of the one is more favorable to the plaintiff than that of the two.

The fact, however, is that in no reasonable view to be taken of the evidence, as it appears to us, has the plaintiff shown that this unfortunate occurrence was due to the unsafe condition of the place where the deceased was at work, or the track over which he was driving the coal car at the time.

Was the accident caused by the cap-board which was found on the track? This cap-board we have described. Its purpose was to tighten up the cross-beams over the entry against the slate which might fall upon the track; that is, when a cross-timber was set over the top of the posts and it was not well up against the roof, then these cap-boards were put in and driven, if necessary, between the top of the posts and the cross-timbers, so as to wedge the cross-timber solidly up against the roof. The statement of plaintiff's witness, Morris, is that after the accident, and after the slate was removed, he found the cap-board in question lying on the left rail as you come out of the

entry, just back behind the car, and that it looked like the wheel of the car had passed over it. Whether this cap-board had been used for the purpose for which it was intended and fell upon the track when the roof of the entry came down, no one was able to tell, or attempted to tell, beyond saying that it did not look as if it had been driven. Its position on the track might have been caused by the accident itself instead of it having caused the accident. The one inference from the facts proved is just as logical as the other.

If, however, it could be conceded that this cap-board caused the accident, clearly the defendant company could not be held liable therefor, unless it be shown that the cap-board was where it might have caused the accident by reason of the neglect of duty on the part of the defendant company owing to plaintiff's intestate, the neglect of which was the proximate cause of the accident. As to when and how the cap-board got upon the track there is not the slightest proof; all is purely conjecture, and of the theories which have been suggested merely in argument the one is no more plausible than any other. If the cap-board caused the derailment of the front truck of the car, and the striking of the car against the outer prop of the entry caused the fall of the roof of the entry, how are the facts that the cross-beam from the second set of props, farther back in the entry, was found upon the top of the car and plaintiff's intestate under the fallen slate, at least eight feet from the rear end of the car, to be explained? It is obvious, we think, that the roof of the entry had given way, in part at least, before the car reached the dented post; otherwise the cross-beam from back in the entry could not have fallen upon the top of the car, nor the deceased caught under the slate eight feet from the rear of the car. Whether the falling in of the roof of the entry caused the derailment of the car, or the cap-board on the track, the evidence

does not disclose; and even if the facts shown would warrant the inference that the accident was due to the one or the other of these causes, they fail to disclose that the defendant company was responsible therefor by reason of having neglected a duty which it owed to the plaintiff's intestate, the neglect of which was the proximate cause of his injuries. All is left to conjecture.

"What constitutes ordinary deligence or care in a given case is always a question of fact to be determined by the jury in view of surrounding circumstances, when there is substantial evidence upon which to submit such an issue; but in the absence of such evidence it becomes a question of law to be determined by the court.

"It is not negligence to fail to take precautionary measures to prevent an injury, which if taken would have prevented it, when the injury could not reasonably have been anticipated, and would not have happened but for the occurrence of exceptional circumstances. *American Brewing Co.* v. *Talbot,* 141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538; Ray on Neg. of Imp. Duties, 133-4; Webb's Pollock on Torts, 45-6."

This principle has been sanctioned by this court in numerous cases.

In *Moore L. Co.* v. *Johnston,* 103 Va. 84, 48 S. E. 557, it was held: "The negligence of a master cannot be inferred from the mere occurrence of an accident by which his servant was injured. That fact alone does not raise even a *prima facie* presumption that the master has been guilty of negligence or a breach of duty to his servant. Negligence of the master, in such case, is an affirmative fact to be established by the injured servant. If the injury may have resulted from one of two causes, for one of which the master is responsible, but not the other, the servant cannot recover; neither can he recover if

it is just as probable that the injury was caused by the one as the other."

Again, in *C. & O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508, the opinion says: "The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence; and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred— some fact or facts by which it can be determined by the jury— and not be left to conjecture, guess or random judgment, upon mere supposition, without a single known fact." *C. & O. Ry. Co.* v. *Sparrow's Admr.,* 98 Va. 630, 37 S. E. 302; *N. & W. Ry. Co.* v. *Cromer's Admr.,* 99 Va. 763, 40 S. E. 54; *Southern Ry. Co.* v. *Hall's Admr.,* 102 Va. 135, 45 S. E. 867.

A defendant in an action to recover damages for a personal injury cannot be held liable therefor unless the neglect of some duty he owed the party injured was the proximate cause of the injury. The first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and the second requisite is that it did produce it. *Hayes* v. *Southern Ry. Co.* (N. C.), 53 S. E. 847; *Brewster* v. *Elizabeth City,* 137 N. C. 395, 49 S. E. 885.

In the case at bar, viewed in the strictest observance of the rule governing its consideration, the evidence fails to prove that the injury to plaintiff's intestate was due to a defective track over which he was driving a coal car at the time of his injury,

or to the accumulation of "gob" or other obstruction upon the track, unless it be the cap-board found on the track, as stated, or to the neglect of the duty of defendant with respect to inspection, which is neither alleged nor attempted to be proven. As we have remarked, there is no proof as to when or how the cap-board got where it was found. If it had been left by someone lying loose in the entry, it could not be reasonably said that a person of ordinary prudence would have foreseen that it might naturally and probably get upon the track and cause the derailment of a car going in or out of the mine.

"It is right and proper that the master should be required to anticipate and guard against consequences that may be reasonably expected to occur, but it would violate every principle of justice or law if he should be compelled to foresee and provide against that which reasonable and prudent men would not expect to happen." *Persinger* v. *Alleghany O. & I. Co.,* 102 Va. 350, 46 S. E. 325, and authorities cited.

The evidence in such a case must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence. *Humphreys* v. *Valley R. Co.,* 100 Va. 749, 42 S. E. 882.

Upon the whole case, as to how the accident causing the death of plaintiff's intestate was brought about, the allegations of the declaration are vague and indefinite, and the proof is equally so; all is uncertainty, leaving the responsibility of the defendant company for its occurrence to mere conjecture and random judgment, without a single known fact to support it. We are of opinion, therefore, that the judgment of the Circuit Court, upon the demurrer of the defendant company to the plaintiff's evidence is erroneous, and should be reversed;

Opinion.

and this court will enter the judgment that the Circuit Court should have entered in favor of the defendant company with costs.

*Reversed.*