𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

NORFOLK AND WESTERN RAILWAY COMPANY v. McDONALD'S
ADMINISTRATRIX.

November 22, 1906.

Absent, Buchanan, J.

1. MASTER AND SERVANT—*Negligent Injury of Servant—Burden of Proof—Case at Bar.*—In an action against a master to recover for an injury negligently inflicted on the servant the burden of proof is on the plaintiff to establish the negligence of the defendant by affirmative evidence, which must show more than a mere probability of a negligent act. The existence of negligence must not be left wholly to conjecture, and, in determining whether or not an act or omission of the master was negligent, it must be borne in mind that the master is not compelled to foresee and provide against that which reasonable and prudent men would not expect to happen. In the case at bar the conductor of a material train, who had absolute control of the train which was unloading steel rails, was killed under circumstances which show that it was an accident pure and simple, which could not have been prevented by any foresight on the part of the company.

Error to a judgment of the Circuit Court of Clarke county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Marshall McCormick* and *Jos. I. Doran,* for the plaintiff in error.

*O'Flaherty & Fulton* and *Robert F. Leedy,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

This action was brought by the administratrix of Alexander McDonald to recover from the Norfolk and Western Railway Company damages for the alleged negligent killing of plaintiff's intestate. McDonald, plaintiff's intestate, was a conductor in the employ of the defendant company, and had absolute and complete charge of a construction train which was unloading, at the time of the injuries of which he died, eighty-five-pound steel rails. The rails were loaded in a stock car, and had been shipped from the factory in that car, and had to be gotten out, and the question was how to get them out most conveniently and safely. The defendant company had adopted the preceding year the method of unloading these rails by means of a rope about fifty feet long, with an iron or steel hook to each end. One hook was placed under the rail of the track and the other was fastened in a bolt hole in the rail on the car. The train at the time consisted only of the engine and two stock cars attached to the front of the engine, the engine in propelling the cars along the line of railway moving backwards. In unloading the rails, McDonald had the direction of the work to be done and the movement of the engine and cars backward and forward, and this, under the rules of the company, was his whole duty. When the rope was placed, as stated, with the hook on one end under the rail on the track and the other fastened in a bolt hole in the rail on the car which at the moment was to be pulled out of the rear end of the car and thrown on the ground, the man who had placed the hook under the rail of the track, just as the engine had been signaled forward, discovering that it was straightening, cried out to McDonald "Whoa"; thereupon McDonald, who had himself placed the hook in the end of the rail in the car and had stepped back from the car some eight or ten feet, holding on to the rope with his right hand, signaled with his left hand to the man in charge of the engine to stop, and the engine was stopped, but before this was accomplished

the hook under the rail pulled out, and flying back in the direction of the car struck McDonald on the back of his head, inflicting an injury from which he died in a few moments.

The essential grievances stated in the declaration are that the defendant company failed to provide suitable and safe appliances to be used in the work required to be done on the occasion of this accident; that a sufficient number of competent employees to do this work were wanting; and that the method adopted by the defendant company for unloading the rails from the car was an unsafe method.

The jury found a verdict for the plaintiff and assessed the damages at $5,000, and thereupon the defendant company moved for a new trial upon the ground that the verdict was contrary to the law and the evidence, and for other reasons; but the court overruled the motion and gave judgment for the plaintiff, to which action of the court the defendant company duly excepted, and the case is now before us for review upon a writ of error awarded the defendant company.

We are of opinion that in no aspect of the case, under the evidence adduced, was the plaintiff entitled to recover, and in this view it is unnecessary to consider any other assignment of error than the refusal of the court to set aside the verdict as contrary to the law and the evidence.

As we review the evidence it will clearly appear, we think, that if it were conceded that the engine in use at the time was out of order, its air-brakes not working; that the fireman, who at the time was handling the engine, the engineer having necessarily to step aside, was incompetent to discharge the duties of an engineer; and that the defendant company did not have engaged in the work of unloading these rails a sufficient number of competent employees to do such work, there is not the slightest foundation for the contention that the unfortunate occurrence in which McDonald lost his life was brought about from either of those causes. Nor is it necessary to determine whether or not

McDonald was at the time of his injury at work in the line of his duties.

As stated in the outset, the rails being unloaded at the time were in a stock car, and had been shipped from the factory in that car, and a witness for the plaintiff (Waters), who was in the best position from which to have observed just what happened on the occasion when McDonald lost his life, after stating that the work of unloading the rails was simple, requiring no great art in the doing of it, that the rope and the hooks used were of sufficient strength, and that the doing of this work could be learned in a few minutes, because it simply consisted of placing one hook in one place and another hook in another place, and when that was accomplished the work was over and the employee got out of the path of danger, if there was any, describes the occurrence as follows: "Mr. McDonald was carrying the front end of the rope and hooking under the rail under the car, and I was carrying the hind end of it, and put it under the rail under the track, and I always held my feet against the hook until the rail started out of the car, to keep it from sliding out or anything, and I had my feet against the hook and I felt it give under my feet, and I looked down and saw it was straightening out, and looked at the car and saw that the rail wasn't coming out, and I hollored 'Whoa,' and Mr. McDonald gave the signal to the engineer to shut off, you know, and I felt the hook still giving under my feet, and I just took my eyes off and stepped off down on the ballast over the rail behind me, and when I looked up Mr. McDonald was going down the bank." This witness further states that the whole thing was done so quickly that he could not calculate it even in seconds, and that the rope and hooks at either end were of sufficient strength to do the work in which they were engaged. It further appears that the whole trouble grew out of the end of the rail catching on one of the stanchions or upright pieces of the car. It was the end of the rail in which McDonald had placed the hook, and if there was danger of the rail so hanging no one could have

known it better than McDonald himself. When he was notified by Waters that something was wrong, he immediately signaled the man on the engine to stop, and this man (Koontz), who was examined as a witness, states that he did stop the engine, and upon cross-examination, though reluctantly, says that he stopped it immediately, his whole testimony being to the effect that it was stopped as soon, as instantaneously, as it could have been stopped if it had been in charge of the most experienced engineer, and equipped with the most improved appliances. But, be that as it may, we have this situation: When Waters, at the end of the rope, where he hooked it under the rail, discovered that the rail on the car was not coming out, that the rope had been stretched to its fullest capacity, and the hook under the rail straightening, he at once notified McDonald of the danger, and in a space of time which he could not count in seconds the injury to McDonald had been inflicted and he had fallen over the bank, where he expired immediately. It was done, says the witness, in the twinkling of an eye. There was no danger whatever in the situation, no neglect whatever of any duty which the defendant company owed to McDonald, until the man at the end of the rope hooked under the rail found the hook straightening out. The rope was then tight and straightening upon the hook, and it was impossible for the man at the hook to signal McDonald, McDonald transmit the signal to the engineman, and the engineman stop the engine in time to prevent the accident. If the engine had been of the most improved type and equipped with the most improved appliances it was a matter of physical impossibility for the accident under the circumstances, brought about in an instant of time, to have been avoided.

This is the case made in the record by the uncontradicted evidence and considered under the rule governing its consideration by this court.

The burden is upon the plaintiff to make out her case, which is in the first instance to establish the negligence of the defendant company, by affirmative evidence, which must show

more than a mere probability of a negligent act.   It is true that the proof need not be direct and positive by some one who witnesses the occurrence and saw how it happened, but it must be such as to satisfy reasonable and well-balanced minds that it resulted from the negligence of the defendant.   *Consumers' Brewing Co.* v. *Doyle,* 102 Va. 399, 46 S. E. 390, and authorities cited.   There being nothing in the situation to suggest danger to any one until the moment when McDonald received his injury, it was an utter impossibility for the defendant company to have foreseen the danger and guarded against it.   If the accident had been anticipated it could have been easily avoided, and by no one more easily than McDonald himself.   If he, at the point where the danger originated, failed to foresee it in time to guard against it, it was impossible, as it seems to us, that the defendant company could have anticipated the danger and guarded against it.   It has been repeatedly said by this court, with the sanction of innumerable cases decided by other courts, that it would violate every principle of justice or law if a defendant, in an action to recover damages for injuries by an employer to his employee, were compelled to foresee and provide against that which reasonable and prudent men would not expect to happen.

It was a matter of pure speculation or conjecture, according to plaintiff's own evidence in this case, as to what the defendant company could or should have done to avoid the condition of things which arose in a moment of time, and which resulted in the injury to McDonald.   The evidence fails utterly to point out any negligence on the defendant company's part which could be fairly considered as the proximate cause of this injury.

As said by this court in *N. & W. Ry. Co.* v. *Cromer,* 101 Va. 671, 44 S. E. 899: "The existence of negligence must not be left entirely to conjecture, and courts cannot uphold the tentative conclusions of juries based upon no sure grounds of inference."

The evidence proves no more than that the occurrence, re-

sulting in the injury and death of McDonald, was an accident pure and simple, for which the defendant company could not, either in law or justice, be held responsible.

We are therefore of opinion that the lower court erred in overruling the motion of the defendant company to set aside the verdict, and its judgment must be reversed, and the case remanded for a new trial.

*Reversed.*