**Richmond.**

## WASHINGTON AND OLD DOMINION RAILWAY V. WARNER.

### January 16, 1919.

1. APPEAL AND ERROR—*Demurrer to Evidence Rule—Conflicting Evidence.*—Under the drastic demurrer to evidence rule, the verdict of the jury resolves the conflict of evidence in favor of defendant in error, and its finding is conclusive upon the Supreme Court of Appeals, and following this rule in the instant case, it was held that the negligence of the defendant, as charged in the declaration, had been established.

2. MASTER AND SERVANT—*Injury to Servant—Rules, Regulation and Operation of Cars—Declaration.*—In an action under the federal employer's liability act (U. S. Comp. St., sections 8657-8665) for personal injuries suffered by a motorman on one of defendant's cars in collision with another car, a count in the declaration charged that defendant's train dispatcher negligently caused plaintiff to run his passenger motor car into another passenger car of the defendant by ordering plaintiff to take his car out on the westbound track without informing him that two minutes previously, in violation of a rule of the company, he had sent another car out over the same track.

   *Held:* That this count stated a good cause of action.

3. MASTER AND SERVANT—*Injury to Servant—Declaration—Bill of Particulars.*—In an action under the federal employer's liability act (U. S. Comp. St., sections 8657-8665) for personal injuries suffered by a motorman on one of defendant's cars in collision with another car, a count in the declaration charged that the servants of defendant in charge of the other car negligently collided with the car operated by plaintiff. It was objected to this count that it did not state the time, place or circumstances under which the collision occurred.

   *Held:* That the objection to this count was cured by a bill of particulars, giving in detail the grounds of negligence relied on.

4. MASTER AND SERVANT—*Injury to Servant—Declaration—Assumption of Risk.*—In an action under the federal employer's liability act (U. S. Comp. St., section 8657-8665) for personal injuries suffered by a motorman on one of defendant's cars in

collision with another car, a count in the declaration charged that the servant of defendant in charge of the other car negligently collided with the car operated by plaintiff. This count was demurred to on the ground that plaintiff assumed the risk of the accident of which he complained and was not entitled to recover.

*Held:* That the count does not allege such facts as would warrant the court to say, as matter of law, that plaintiff *assumed the risk of the accident,* and, therefore, was not entitled to recover. Under the evidence, the matter of *assumed risk* was a jury question, and is concluded by the verdict.

5. EXPERT AND OPINION EVIDENCE—*Physician—Evidence Impeaching Ethical Standing.*—In an action by a servant against his master for injuries sustained in the course of his employment, evidence aimed rather at the ethical standing of a witness, plaintiff's physician, than at his professional skill, was inadmissible.

6. EXPERT AND OPINION EVIDENCE—*Distance Within Which a Car Could be Stopped.*—In an action for injuries sustained in a collision between street cars, objection to the admission of the testimony of an opinion witness, who was familiar with car run by plaintiff and its equipment, as to the distance within which it could be stopped, because he had not run the car on the day of the accident, affected the weight of the evidence and not its competency.

7. EXPERT AND OPINION EVIDENCE—*Qualification.*—A motorman, with years of experience, is qualified to speak as an expert as to whether it was possible for him to have stopped his car in time to prevent an accident. Besides, in the instant case, witness had already given in detail the reasons why he could not stop his car.

8. WITNESSES—*Necessity of Showing Materiality of Evidence.*—The refusal of the court to permit certain questions to be propounded to witnesses is not error, where it was not shown by avowal of counsel or otherwise that the answers sought to be elicited were material.

9. FEDERAL EMPLOYER'S LIABILITY ACT—*Contributory Negligence—Instructions.*—In an action under the federal employer's liability act (U. S. Comp. St., sections 8657-8665) for personal injuries suffered by a motorman on one of defendant's cars in collision with another car, the court instructed the jury that if you find the plaintiff was himself guilty of contributory negligence, you shall diminish the damages in proportion to the amount of negligence which is attributable to him.

*Held:* That this was a correct exposition of that provision of the federal employer's liability act, that "Contributory neg-

ligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributed to such employee."

Error to a judgment of the Circuit Court of Alexandria county, in an action of trespass on the case. Verdict for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. J. Lambert, C. E. Nicol* and *R. H. Yeatman,* for the plaintiff in error.

*Crandall Mackey,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

Defendant in error, Arthur C. Warner, brought this action under the federal employer's liability act (Act Cong. April 22, 1908, C 149, 35 Stat. 65 [U. S. Comp. St. secs. 8657-8665]), against the plaintiff in error, the Washington and Old Dominion Railway, to recover damages for personal injuries suffered by him while a motorman on one of defendant's cars in collision with another car, the property of defendant, which he alleges was due to the defendant's negligence. The jury returned a verdict for plaintiff, upon which the judgment under review was rendered.

In outline, the situation out of which the litigation arose is as follows:

Defendant owns and operates an electric double track trolley line of railway from its eastern terminus at 36th and M streets, N. W., in the city of Washington, District of Columbia, extending in a southerly and westerly direction to Great Falls, on the Potomac river in Fairfax county, Virginia and beyond. Cars leaving Washington destined

for Great Falls and intermediate stops traverse the westbound track, whilst cars returning to Washington use the eastbound track.

An extra, unscheduled car, No. 72, on the day of the accident, was destined to Cherry Dale, a stop on the westbound track several miles east of Great Falls. On reaching Cherry Dale it had to discharge its passengers and proceed thence westwardly a few hundred feet to a switch, or crossover, and to pass over the same to the eastbound track and return to Washington.

On October 26, 1915, plaintiff left Washington at 3:30 p. m., in car No. 4, destined for Great Falls, without being informed and without knowing that the unscheduled car, No. 72, had been sent out on the same track just two minutes ahead of it, in violation of the rule of the company which required that all cars running in front of a regular scheduled car should have a clearance of ten minutes. The evidence in support of the opposing theories as to the cause and manner of the collision is irreconcilably conflicting. On behalf of the plaintiff it tends to show that when No. 4 reached Cherry Dale and had discharged its passengers, it proceeded on its way at the rate of ten or twelve miles an hour; that the first intimation plaintiff had of the presence of No. 72 on the track ahead of him was when, in about one hundred and fifty feet of the cross-over, he discovered the car some fifty feet west of that point; that it was approaching him at the rate of fifteen or twenty miles an hour, that the collision occurred about one minute after he left Cherry Dale; that No. 72 gave no notice of its presence on the track either by whistle, bell or gong, and did not send back a flagman to give warning; that from his seat on the stool in the middle of the front vestibule of the car he could not see the cross-over from Cherry Dale. When he came in sight of No. 72 he did all in his power to stop his car and avoid a collision; he tried to reverse, but that

did not work, and he then shut off the power and applied the brakes, using all the air he had, and remained at his post until the impact occurred and his hands were cut with the broken glass and he was knocked back on the floor in an unconscious condition. Immediately before the collision he saw no crew on the end of No. 72, which was backing toward him, and there was nobody at the brake to stop the car.

The testimony of the defendant was diametrically opposed to that of plaintiff. It was said that No. 4 ran down upon No. 72 while plaintiff was sitting on his stool with his head hanging down and all that could be seen was his cap; that his face was not visible; that when he had approached to within twenty-five or thirty feet of No. 72, the motorman, whose car was then partly on the cross-over, yelled at him and blew the whistle, but he gave no heed to either signal and did not move; that he made no effort whatever to stop his car, which at the speed he was going, eight or ten miles an hour, could have been stopped without using air in time to prevent the collision.

[1] The jury visited the scene of the accident, and had the benefit that a view affords of apprehending and applying the evidence. Under the drastic demurrer to the evidence rule, the verdict of the jury has resolved the conflict of evidence in plaintiff's favor, and their finding is conclusive upon this court.

As was said by Keith, P., in delivering the opinion of the court in *Southern Ry. Co.* v. *Aldridge,* 101 Va. 142, 149, 43 S. E. 333, 335; "We are aware, of course, that the evidence with respect to many of these facts is strongly controverted. It may be conceded that the weight of evidence is with the plaintiff in error as to some of them, but that avails nothing under the rule governing demurrers to evidence." Following that rule, we must hold that the negligence of the defendant, as charged in both counts of the

declaration, has been established. The difference between this case and that of *Mason* v. *Post,* 105 Va. 494, 54 S. E. 311, 11 L. R. A. (N. S.) 1038, cited and relied on by plaintiff in error is obvious. There the fact was undisputed that the accident resulted from the grossest negligence of plaintiff, a motorman, who *insisted upon his right of way,* had a head-on collision with an approaching car in plain view without making the slightest effort to avoid it.

It only remains to inquire whether the trial court has committed error of law which demands the reversal of its judgment.

[2] The first assignment of error is to the action of the court in overruling the demurrer. There were two counts in the declaration. The *crux* of the first count is, that defendant's train dispatcher negligently caused plaintiff to run his passenger motor car into another passenger car of the defendant by ordering plaintiff to take his car out on the westbound track without informing him that two minutes previously, in violation of a rule of the company, he had sent another car out over the same track.

We are of opinion that this count states a good cause of action. *Va. & S. W. Ry. Co.* v. *Clowers,* 102 Va. 867, 47 S. E. 1003; Gregory's Forms, No. 119.

The second count charges that the servants of defendant in charge of the extra car negligently collided with the car operated by plaintiff and inflicted upon him the injuries for which he sues.

The grounds of demurrer to the second count are:

"1.    That said count does not state the time, place or circumstances under which the collision occurred; and

"2.    That plaintiff assumed the risk of the accident of which he complains and is not entitled to recover."

[3] The first objection to this count was cured by a bill of particulars, giving in detail the grounds of negligence relied on.

58

[4]    With respect to the second ground of demurrer, the count does not allege such facts as would warrant the court to say, as matter of law, that plaintiff *assumed the risk of the accident,* and, therefore, was not entitled to recover. Under the evidence, we are of opinion that the matter of assumed risk was a jury question, and is concluded by the verdict. *Turner* v. *Richmond & R. R. R. Co.,* 121 Va. 194, 92 S. E. 841, and authorities cited.

[5]    The second and fifth assignments of error are to the refusal of the court to admit evidence tending to disparage the professional standing of Dr. Radey, the attendant physician on plaintiff when injured; and, incidentally, to affect the reliability of his testimony. The court refused to permit witness to be examined as to the reasons why he was denied membership in the Medical Association of the city of Washington; and also excluded the evidence of a medical witness concerning his standing in the profession. Dr. Radey was a graduate of Georgetown University, and had practiced medicine about ten years; and the proposed attack was aimed rather at his ethical standing than his professional skill. A person may be a competent physician and yet disregardful of professional proprieties.

The third, fourth, sixth, seventh and eighth assignments draw in question rulings of the court with respect to the admission and exclusion of evidence.

[6]    The third was to the admission of the testimony of an opinion witness, who was familiar with Car No. 4, and its equipment, as to the distance within which it can be stopped, because he had not run the car on the day of the accident. The objection affected the weight of the evidence, not its competency.

[7]    The fourth was because counsel was permitted to ask plaintiff whether it was possible for him to have stopped his car in time to prevent the accident, on the ground

that it called for an opinion. Witness had already given in detail the reasons why he could not stop the car, and besides he was a motorman with years of experience and qualified to speak as an expert on the subject.

[8] The sixth and seventh were to the refusal of the court to permit certain questions to be propounded to witnesses. These assignments cannot be availed of, since it was not shown by avowal of counsel or otherwise that the answers sought to be elicited were material.

The eighth assignment relates to the refusal of the court to sign a bill of exceptions. That also involved objection to a ruling with respect to a question, the answer to which was not given.

[9] The ninth assignment goes to the concluding paragraph of an instruction as to the measure of damages, which reads as follows: "but if you find the plaintiff was himself guilty of contributory negligence, you shall diminish the damages in proportion to the amount of negligence which is attributable to him." This is a correct exposition of the act of Congress under which this action was brought, that "Contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributed to such employee." The instruction was taken from an instruction approved by the Supreme Court of the United States in the case of *St Louis & S. F. R. Co.* v. *Brown,* 241 U. S. 223, 36 Sup. Ct. 602, 60 L. Ed. 966.

The tenth and eleventh assignments have been sufficiently discussed to show that they present no reversible grounds of error. The first is an *omnibus* assignment covering objections already disposed of, and the last is to the refusal of the court to set aside the verdict as contrary to the law and evidence.

For the reasons given, we are of opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*