𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## SOUTHERN RAILWAY COMPANY V. ELIZA ADAMS, ADMINISTRATRIX OF THOS. D. ADAMS, WHO SUES FOR THE BENEFIT OF WILLIAM ADAMS AND ELIZA ADAMS.

### January 20, 1921.

1. MASTER AND SERVANT.—*Federal Employers' Liability Act—Negligence of Carrier—Res Ipsa Loquitur.*—As the Federal employers' liability act (U. S. Comp. St. secs. 8657-8665) provides for liability in case of injury, or death, resulting in whole or in part from the negligence of common carriers by railroad in interstate commerce, the carrier's negligence must be established by direct or circumstantial evidence, as a prerequisite of recovery. The doctrine of *res ipsa loquitur* has no application in an action by an employee against a common carrier, under the statute.

2. NEGLIGENCE.—*Pleading—Proof of Negligence.*—It is an elementary proposition that he who alleges negligence must establish it. This is certainly the rule in Virginia, and the decisions by the Supreme Court of the United States, in cases arising under the Federal employers liability act, are to the same effect.

3. FEDERAL EMPLOYERS' LIABILITY ACT.—*Negligence of Carrier—Fact of Death or Injury.*—The mere fact that an employee has been killed, or injured, by an interstate carrier, does not justify the conclusion that the death, or injury, was negligently inflicted. To justify the conclusion that the party inflicting an injury was negligent, some information at least must be afforded of the circumstances of the injury. Neither a court nor a jury can indulge in mere surmise or speculation as a foundation for a verdict or judgment.

4. FEDERAL EMPLOYERS' LIABILITY ACT.—*Death or Injury of Employee as Proof of Negligence—Case at Bar.*—In the instant case, an action under the Federal employers' liability act (U. S. Comp. St. secs. 8657-8665) for the death of an employee, the employee was found dead near the track with injuries from which it might be inferred that he had been

30

struck by a train. When last seen alive he was walking northwardly upon the south-bound track to report for work in pursuance of his orders. The train which was supposed to have killed him was a north-bound passenger train running on the south-bound track.

*Held:* That defendant's demurrer to the evidence should have been sustained, as plaintiff had failed to prove defendant's negligence.

5. NEGLIGENCE.—*Evidence to Establish—Inference from a Presumption.*—In actions for death or injury, unless the circumstances of an accident are measurably revealed by the evidence, it is impossible to fix the responsibility of a defendant by the processes of reason, and in such an extremity we are forbidden by the established rules of law to draw an inference from a presumption.

Error to a judgment of the Circuit Court of Orange county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Schackelford & Robertson,* for the plaintiff in error.

*Browning & Browning,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This is an action under the Federal employer's liability act (U. S. Comp. St. secs. 8657-8665), brought by Eliza Adams, administratrix of her son, Thomas D. Adams, against the Southern Railway Company, to recover damages for the death of plaintiff's intestate.

Thomas D. Adams was the infant son of Eliza and William Adams, and at the time of his death was in the employment of the defendant company as a section hand, working near the town of Orange.

It is admitted that when the fatal injuries were inflicted both he and the company were "engaged in interstate commerce." Further, it is admitted that this case comes within the provisions of the act, *supra,* and that this act should be construed in the light of the decisions of the Federal courts.

On the morning of August 17, 1917, the decedent left his home to report for duty with the section force engaged in the maintenance of the tracks of the said company between Orange and Charlottesville. He was going north from his home when he was killed by a train proceeding in the same direction. Both north and south of Orange the road is double-tracked, and as a rule the track on the right going north is used by the northbound trains, and the other track—that is, the track on the west side of the first track—is used by the southbound trains. On this particular morning the train which inflicted the fatal injuries was proceeding on the track commonly used by the southbound trains.

The defendant company demurred to the evidence, and the jury returned a verdict for the plaintiff in the sum of $1,000, subject to this demurrer. To the judgment of the trial court overruling this demurrer, the defendant company applied for and secured a writ of error and supersedeas from one of the judges of this court.

The defendant contends that there is a "total lack of evidence upon which the jury could base a verdict predicated upon the negligence of the defendant," and that for this reason the trial court erred in overruling the demurrer to the evidence.

The circumstances of young Adams' death so far as they are afforded by the testimony, are practically to be derived from the testimony of Dr. Holladay, who as coroner of Orange county conducted the inquest on the decedent's body, and of E. A. and Gordon Butler, who met the young man on the railroad track shortly before his death. These

latter witnesses, after meeting Adams, walked on about one hundred yards before seeing the train. This train, after coming into view, had to traverse over four hundred yards before reaching and striking the decedent. No witnesses saw Adams after he parted from the two Butlers, and the conclusion that the train killed him is a deduction from circumstantial evidence.

The testimony of the three witnesses, *supra*, and of W. C. Bond, who made certain measurements (omitting the unimportant portions of same), is as follows:

Dr. Lewis Holladay (for the plaintiff):

"Q. Dr. Holladay, did you hold, as coroner, a coroner's inquest over Thomas Adams August 17, 1917?

"A. I did. * * * *

"Q. You saw his dead body lying beside the track?

"A. Yes.

"Q. Which side of the track, * * * *

"A. It was the right hand side of the track looking south. * * * *

"Q. Doctor, what did you find with reference to what killed him.

"A. I found his skull just above and behind his right ear was crushed in, and the brain substance oozing out, and the jaw bone fractured.

"Q. Could you tell whether he was killed instantly, or whether he lived an appreciable time after he was struck?

"A. In my opinion he was killed instantly * * *.

"Q. By what sort of an instrument was he killed?

"A. I should say some sort of blunt instrument, from the fact that the skull was crushed in that way, and the jaw bone down here broken."

E. A. Butler (for the plaintiff):

"Q. Where were you on the morning of August 17, 1917?

"A. I was on my way up there. (To Mr. Kinser's place, south of Orange Court House.)

"Q. How did you go?

"A. We walked the railroad down there. * * *

"Q. Did you meet any one that morning?

"A. Yes, sir, we met a boy.

"Q. Where did you meet him?

"A. Just above Willis' crossing, as they call it.

"Q. Which way was he coming?

"A. He was coming towards Orange. * * * *

"Q. Which track were you walking on?

"A. I was on the right track the way I was going (*i. e.,* to the south).

"Q. On which track was he?

"A. On the same track.

"Q. After you met him, did you meet any train?

"A. Yes.

"Q. Which way was the train running?

"A. The train was coming this way * * * on the left hand track coming this way.

"Q. How far had you gone, after you met this boy, before you met this train?

"A. Fifty or a hundred yards, or something like that.

"Q. Did you see the train hit the boy?

"A. No. * * It just kept on. * * It did not stop * * it made no sound other than the sound of running * * it did not blow the whistle, or ring the bell * * it was a passenger train * * it was running pretty fast * * it was about half past six in the morning * * the track was pretty straight, some 400 or 500 yards it is a straight line * * there was nothing to prevent the engineer from seeing any one on the track * * * did not look back after meeting him."

Cross-Examination.

"I reckon it was about 100 yards after I passed the boy before I saw the train.

By the Jury:

"Q. How far is the space between where the boy was

struck and where the train was coming.

"A. I reckon 200 or 300 yards. You can see the train when it runs out from that bridge."

W. C. Bond (for the plaintiff):

"Q. Did you examine the track along where the boy was found?

"A. Yes. * * I reckon ten or twelve feet beyond where the body was lying, that is south of the body, we could see little spots of blood and flesh, strung along the track up to where the body was laying. * * * It was 455 yards from where the body was lying before you got to the curve going south, and perfectly straight."

Gordon Butler (for the plaintiff):

"Q. Where were you on the morning of the 17th August 1917, and did you meet any one?

"A. I went up the Southern road (to Mr. Kinser's) and met a colored boy coming north. * * We were on the same track. * * We met a train shortly after we met the boy * * it was a passenger train * * it kept on going * * I never heard it blow, or stop, or anything of the kind * * it was between six and seven in the morning."

Cross-Examination.

"I was meeting the train. I could see and hear it all right."

On the part of the defendant no witnesses were introduced in relation to the circumstances of the accident.

From the evidence it appears that at the time of his death the decedent was using the track of the defendant company as a licensee.

[1] In the trial court the company assigned various grounds in its demurrer to the evidence, but the principal error relied on in this court is that the evidence for the plaintiff does not establish negligence on the part of the company. Further, it is insisted on behalf of the plaintiff in error that as the Federal statute provides for liability

in case of injury, or death, resulting in whole or in part from the negligence of common carriers by railroad in interstate commerce, this negligence must be established by direct, or circumstantial evidence, as a pre-requisite of recovery, and that the doctrine of *res ipsa loquitur* has no application in an action by an employee against a common carrier, under the statute, *supra.*

[2, 3] These contentions appear to be consistent with reason and authority. The plaintiff's declaration alleges that the death of the intestate was due to the negligence of the defendant. It is an elementary proposition that he who alleges negligence must establish it. This is certainly the rule in Virginia, and the decisions by the Supreme Court of the United States, in cases arising under the Federal employer's liability act, are to the same effect. We have been cited to no Federal cases holding that the mere fact that an employee has been killed, or injured, by an interstate carrier, justifies the conclusion that this death, or injury, was negligently inflicted. To justify the conclusion that the party inflicting an injury was negligent some information at least must be afforded of the circumstances of the injury. If that information is afforded to an extent sufficient to support a conclusion of negligence, even though reasonable men might differ in that respect, the case belongs to the jury, and on demurrer to the evidence the conclusion that they might have drawn, favorable to the plaintiff, is the conclusion that the court must adopt. But neither a court nor a jury can indulge in mere surmise or speculation as a foundation for a verdict, or a judgment.

In the recent case of *Southern Railway Company* v. *Gray*, 241 U. S. 333, on p. 339, 36 Sup. Ct. 558, on p. 561 (60 L. Ed. 1030), arising under the Federal employers' liability act, the court says: "Negligence by the railway company is essential to a recovery; and there is not a

scintilla of evidence to show this, under the most favorable view of the testimony urged by counsel for the defendant in error."

In the case of *Patton* v. *Texas Pacific Railroad Co.*, 179 U. S. 663, 21 Sup. Ct. 277, 45 L. Ed. 361, the court said: "The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish, that the employer has been guilty of negligence. * * *

"It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the evidence for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which a plaintiff fails in his testimony."

If a plaintiff fails to make out his case, it is not the function either of the jury, or a court, to make out a case for him by departing from the settled rules of proof resting upon plaintiffs, and drawing conclusions from surmise or conjecture.

In the case of *Looney* v. *Metropolitan Railroad Co.*, 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, decided before the passage of the Federal employers' liability act, the court held as follows: "In an action for damages for personal injuries * * * the plaintiff must establish the grounds of defendant's liability. * * Negligence of the defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plain-

tiff.   There is equally a presumption that the defendant performed his duty."

In the case of *Smith* v. *Illinois Cent. R. Co.*, decided by the Circuit Court of Appeals of the Sixth Circuit (200 Fed. 553, 119 C. C. A. 33), and in which the evidence as to the circumstances of death was very meagre, the court held, that "a railroad company was not liable for the death of an engineer who was found lying beside his engine between two tracks in the company's yard, with his foot practically cut off, and the only other evidence was that he was last before seen about one hundred feet from his engine, walking towards it on an adjoining track, and that an engine in charge of a hostler passed on such track just as decedent was seen lying on the ground; the manner of his death being a matter of speculation."

Further, on p. 555 of 200 Fed., on p. 35 of 119 C. C. A.: "Whether defendant's liability is to be rested on common law principles, or upon the Employers' liability act, no recovery can be had unless the evidence warrants the verdict that the hostler's negligence was a proximate cause of the accident.   There is no evidence of such negligence, unless it can be inferred from the fact, or manner, of the accident itself.   That the unfortunate engineer was struck by the engine in question is a natural inference, but beyond this the meager testimony leaves the circumstances and the immediate cause of the accident shrouded in mystery. Whatever the fact may have been, there was no evidence that the decedent was struck by the pilot beam, or indeed by any part of the engine, or of any injury to decedent, except as his foot was cut off, presumably by the wheels.   Whether he was overtaken when walking down the track, or whether, after walking between the tracks, he tried to cross in front of the engine and miscalculated the distance, or caught his foot, or whether he was riding on and was caught by the engine in jumping from it, or whether he slipped and fell

31

when climbing onto his own engine, is at best a matter of conjecture. * * *

"The fact that decedent was struck by defendant's engine carries with it no presumption of defendant's negligence, the burden of proving which is on the plaintiff." "The negligence of a defendant cannot be inferred from a presumption of care on the part of the person killed. A presumption of the performance of duty attends the defendant as well as the person killed. It must be overcome by direct evidence. One presumption cannot be built upon another." *Looney's Case, supra,* 200 U. S. p. 488, 26 Sup. Ct. 306, 50 L. Ed. 564.

To the same effect see *New York Central Ry. Co.* v. *Winfield,* 244 U. S. 147, 150, 151, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, and *Gillis' Adm'x.* v. *N. Y. N. H. & H. Ry. Co.,* 249 U. S. 515, 39 Sup. Ct. 355, 63 L. Ed. 738.

Coming to the decisions of this court dealing with the principle under consideration, there is one case, that of *Southern Ry. Co.* v. *Hall's Adm'r.,* 102 Va. 135, 45 S. E. 867, which is singularly in point. Hall was killed by a freight train on the Southern Railway Company's track near the corporate limits of the city of Lynchburg. Like Adams, Hall was using the railroad track at the time of his death as a licensee. Hall and the train that killed him were traveling in the same direction. It was a bright night, and in addition the track for several hundred yards in advance of the train was illluminated by the headlight of the engine, so that an object on the track within that distance could be readily seen. Next morning Hall's dead body was found lying by the side of the track, a short distance from where he was last seen, so bruised about the back of the head and shoulders as to indicate that he had been killed by a passing train. No one saw Hall when he was struck by the train. When last seen he was going south along the

railway track about twenty-five or thirty yards from the point where he was found dead, and the train was then 150 or more yards in the rear. After this last sight of Hall, "there was not a single known fact as to how the accident occurred. All was conjecture and speculation." This court, reversing the judgment of the trial court, said: "The party who affirms negligence must establish it. This is a rule which ought never to be lost sight of. Bailey on Personal Injuries, section 1674. We are of opinion that the negligence of the railroad was not established. Indeed, there was a total lack of evidence upon which the jury could base a verdict prodicated upon the negligence of the defendant company. * * *

"It is not safe to say, because the deceased was found lying by the side of the railroad track, killed evidently as the result of collision with a train, that it was due to the negligence of the employees of the railroad. It may have been entirely the result of his own negligence. * * * With the train 150 yards or more in his rear when last seen, Hall may have been on the pathway at the side of the railroad, or in some other position of safety, and attempted to cross the track, for some reason, when the engine was so close that the engineer could not see him, or, seeing him, could do nothing to save him from his own negligence. Or it may be that after the engine passed he moved too near to the train, and was struck by one of the cars. Indeed, other theories might be suggested in explanation of the accident, but in such cases we are not permitted to indulge in conjecture and speculation. The burden is upon the plaintiff to make out his case, which is the first instance to establish the negligence of the defendant by affirmative evidence, which must show more than a probability of a negligent act.

" 'The proof need not be direct and positive, by some one who witnessed the occurrence and saw how it happened,

but it must be such as to satisfy reasonable and well-balanced minds that it resulted from the negligence of the defendant.'

" 'Every party to an action has a right to insist upon a verdict or finding based upon the law and the evidence in the case, and not, in the absence of evidence, upon mere inference and conjecture.'

" 'When liability depends upon carelessness or fault of a person or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess, or random judgment upon mere supposition, without a single known fact.' * * * *

"An inference cannot be drawn from a presumption, but must be founded upon some fact legally established." See *Southern Ry. Co.* v. *Hall's Adm'r.*, 102 Va. 137-139, 45 S. E. 868, and cases cited.

[4, 5] In the case in judgment, Adams, when last seen, was about 400 yards from the curve at which the train came in sight and about fifty-five yards from the point at which he was struck. The track was straight and the view unobstructed. The witnesses who met Adams do not place him within or outside the rails. They speak of themselves as walking on the track, and Adams as meeting them on the same track. Certainly the injuries described by the coroner do not indicate that Adams was walking on the track between the rails, and in that situation was overtaken by the train and struck down, or hurled aside by the pilot. We might pursue in the case in judgment a like course of speculation and surmise with respect to the circumstances of the death of young Adams as appears in the extracts cited *supra* from *Hall's Case* and *Smith's Case*, and would

reach a like indeterminate conclusion. These exercises of the imagination would fail to afford any solid and satisfactory finding that reason would approve. The books abound in cases in which it clearly appears that the injuries complained of are traceable to the sole and exclusive negligence of the party injured. Common knowledge advises us to the same effect. Hence, unless the circumstances of an accident are measurably revealed by the evidence, it is impossible to fix the responsibility of a defendant by the processes of reason, and in such an extremity we are forbidden by the established rules of law to draw an inference from a presumption.

This is but another instance in which a plaintiff has failed to furnish the evidence necessary for recovery. It is the province neither of the court, nor of the jury, to supply this deficiency and afford a recovery by a *tour de force.*

From what has been said, it is manifest that the trial court erred in failing to sustain the demurrer to the evidence. For that error the finding of the circuit court will be reversed, and this court will enter a judgment in favor of the plaintiff in error, and for its costs in the trial court and in this court.

*Reversed.*