# Richmond.

## Washington and Old Dominion Railway v. Harry Weakley.

### December 18, 1924.

1. Appeal and Error—*Conflicting Evidence—Conclusiveness of Verdict.*—Where the evidence is conflicting a verdict in favor of plaintiff is conclusive in favor of his theory of the case.

2. Last Clear Chance—*Statement of Doctrine.*—Where the plaintiff's negligence contributed to his injury, yet if there was some superadded fact or something abnormal in the attitude or situation of the plaintiff, making it apparent that he is unconscious of his peril, because of his attention being manifestly concentrated upon something else, or because of some other apparent interference with the normal result of the use of his five senses, and this peril was known to the defendant or by the exercise of reasonable care should have been known in time to prevent the injury then the contributory negligence of the plaintiff will not bar his recovery.

3. Last Clear Chance—*Pleading Last Clear Chance—Federal Employers' Liability Act—Case at Bar.*—In the instant case the introduction of evidence to establish the doctrine of last clear chance was objected to because there was no allegation in the declaration that would warrant the testimony. The action was under the Federal Employers' Liability Act, U. S. Comp. St. §§8657-8665, which establishes the doctrine of comparative negligence in cases of railway employees, by which contributory negligence is not a bar to recovery as at common law.

   *Held:* That the evidence was clearly admissible, in a case where the doctrine of comparative negligence is the law, as testimony to increase damages, while in a case of contributory negligence (which is a matter of defense) at common law, such negligence would bar recovery, but the last clear chance doctrine takes the case out of the rule.

4. Witnesses—*Impeachment—Contradictory Statements—Personal Injury Cases.*—Section 6216 of Code of 1919, provides that in actions for personal injury or death, no *ex parte* affidavit or statement in writing, other than a deposition, of a witness as to the facts accompanying the wrongful act or negligence shall be used to contradict him. Hence the trial judge was manifestly right in refusing to allow a witness, in

an action for personal injuries, to be questioned as to contradictory statements made by him on the day of the accident when it became manifest that it was the intention of the defendant to contradict the witness by a prior inconsistent written statement.

5. FEDERAL EMPLOYERS' LIABILITY ACT—*Negligence Must be Shown—Res Ipsa Loquitur.*—As the Federal statute provides for liability in case of injury, resulting in whole or in part from negligence of common carriers by railroad in interstate commerce, this negligence must be established by direct or circumstantial evidence, as a prerequisite of recovery, and the doctrine of *res ipsa loquitur* has no application in an action by an employee against a common carrier, under the statute.

6. NEGLIGENCE—*Allegation and Proof—Federal Employers' Liability Act.*—It is an elementary proposition that he who alleges negligence must establish it. This is certainly the rule in Virginia, and the decisions by the Supreme Court of the United States, in cases under the Federal employers' liability act, are to the same effect.

7. MASTER AND SERVANT—*Flagman Run Over by His Own Train—Duty of Motorman to Protect Flagman—Case at Bar.*—In the instant case, plaintiff, a train hand on an electric railway, was run over and injured by his own train, while standing on the track flagging an approaching train. Plaintiff was on the track where it was not necessary for him to be in discharge of his duties; and he was not using his senses for his own protection as required of him by law. It does not appear from the evidence that he had ever performed his duty in this manner before, nor how he had been protected by the motorman on previous occasions. He was in a state of continuing negligence, and there is no circumstance in connection with his conduct that day nor previous practice which would suggest to an ordinarily prudent person that prevision to protect him against his own negligence was required of the motorman.

8. MASTER AND SERVANT—*Flagman Run Over by His Own Train—Duty of Motorman to Protect Flagman—Case at Bar.*—In the instant case, plaintiff, a train hand on an electric railway, was run over and injured while standing on the track flagging an approaching train.

   *Held:* That the conduct of the motorman of plaintiff's train in looking back to get signals from his conductor was not negligence *per se*, and plaintiff's evidence furnished no fact except his injury from which the jury could infer negligence on the part of the defendant.

9. NEGLIGENCE—*Precautions—Anticipation of Danger—Proximate Cause.*—It is not negligence to fail to take precautionary measures to prevent an injury, which if taken would have prevented it, when the injury could not reasonably have been anticipated and would not have happened but for the occurrence of *exceptional circumstances*. The first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and the second requisite is that it did produce it.

10. Master and Servant—*Trainman Run Over by His Own Train while Flagging Another—Duty of Motorman—Contributory Negligence of Plaintiff—Case at Bar.*—Plaintiff, an employee of an electric railway, was run over and injured by his own train while standing on the track flagging another train. Plaintiff claimed that the motorman of his train should have protected him.

    *Held:* That the expectation of the plaintiff that the motorman would protect him was no excuse for his not being attentive to his own safety.

11. Last Clear Chance—*Burden of Proof.*—The law of the last clear chance is, that the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care *after his peril* was discovered or should have been discovered, there was in fact a clear chance to save the party injured or killed is upon the plaintiff.

12. Last Clear Chance—*Burden of Proof—Flagman Injured by his Own Train—Case at Bar.*—In the instant case plaintiff was run over and injured by his own train while standing on the track flagging another train.

    *Held:* That there was no evidence under which the doctrine of last clear chance could apply, as the motorman did not and could not see and if he had there was nothing in plaintiff's attitude to cause a reasonably prudent person to anticipate that he, in full possession of his faculties, would not make two steps to safety from in front of a moving train.

Error to a judgment of the Circuit Court of Arlington county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Wilson M. Farr, Wilton J. Lambert,* and *Wm. C. Gloth,* for the plaintiff in error.

*Crandall Mackey,* for the defendant in error.

Christian, J., delivered the opinion of the court.

This action was brought by Harry Weakley, plaintiff, against the Washington and Old Dominion Railway, a Virginia corporation, defendant, which owned,

operated and controlled a certain line of electric railway engaged in interstate commerce from its eastern terminus in the city of Washington, D. C., through the counties of Arlington and Fairfax, to Bluemont, in Loudoun, Virginia, for the loss of his leg on the 10th day of May, 1921, at Herndon, Fairfax county, Virginia, while an employee and flagman engaged in the discharge of his duties as such employee, under the Federal employers liability act (U. S. Comp. St. sections 8657-8665) and chapter 236 of the Code of Virginia.

The plaintiff alleged that while in the proper performance of his duties, as an employee of the defendant, he was knocked down and run over and his leg cut off by an electric locomotive in charge of motorman Payne, whose duty it was to look out and protect him. The case was tried by a jury which found a verdict in favor of the plaintiff for $11,500.00, whereupon the defendant made a motion to the court to set aside the verdict because contrary to the law and the evidence, and enter up judgment for the defendant, and further because the verdict was excessive, which motion the court overruled and entered judgment for the plaintiff, to which action of the court the defendant excepted. For alleged errors in overruling its motion for a new trial, the admission and rejection of certain evidence on the trial, and misdirection of the jury, this writ of error was granted. The parties will be referred to in this opinion as plaintiff and defendant as they were in the trial court.

[1] Upon the trial there was a sharp conflict in the testimony as to the cause of the injury. The plaintiff testified that he was standing on the track, flagging the oncoming passenger train, when the milk train upon which he was employed came up behind him, knocked him down and ran over his leg and cut it off. The defendant's testimony tended to prove that from the

physical surroundings it was impossible for the injury
to have happened as the plaintiff claimed. Peterson,
the motorman of the passenger train, the only eyewit-
ness of the occurrence, testified that he saw the plaintiff
cross the track about forty feet in front of the milk
train, and when he had gotten into the middle of the
track or near the west rail, he stumbled and fell, where-
upon he undertook to protect himself from the oncom-
ing milk train which was moving at the rate of five or
six miles an hour, and that he succeeded in getting all
of his body outside of the rails, but his leg, which was
caught under the wheels of the motor car and cut off.
The verdict of the jury is conclusive in favor of the
plaintiff's theory of the case, and in the consideration of
the case, the court must assume that the facts estab-
lished by the plaintiff's evidence are true; keeping in
mind this well established rule of law, let us examine
carefully the facts of the case, from the standpoint of the
plaintiff's evidence, to determine whether he is legally
entitled to the judgment of the court upon the verdict.

Before entering into the discussion of the evidence, it
will be necessary to examine the exceptions of the de-
fendant in regard to the admission of certain evidence
for consideration of the jury, and the exclusion of cer-
tain evidence offered by the defendant.

[2, 3] The most essential error assigned by the de-
fendant is to the action of the court in permitting the
plaintiff to introduce before the jury evidence to estab-
lish the doctrine of the *last clear chance*, because there
was no allegation in the declaration that would war-
rant the testimony. The doctrine of the last clear
chance is well settled in this jurisdiction. "That where
the plaintiff's negligence contributed to his injury, yet
if there was some superadded fact or something abnor-
mal in the attitude or situation of the person afterwards

injured making it apparent that he is unconscious of his peril, because of his attention being manifestly concentrated upon something else, or because of some other apparent interference with the normal result of the use of his five senses, and this peril was known to the defendant, or by the exercise of reasonable care should have been known, in time to prevent the injury, then the contributory negligence of the plaintiff will not bar his recovery." *Ashby* v. *Virginia Ry. & Power Co.,* 138 Va. 310, 122 S. E. 109. "But one relying on the doctrine of the last clear chance has the burden of proving affirmatively by a preponderance of the evidence that, by the use of ordinary care after his peril was discovered or should have been discovered, there was in fact a clear chance to save him." *Washington & O. D. Ry.* v. *Thompson,* 136 Va. 597, 118 S. E. 76.

This action was under the Federal employers liability act (U. S. Comp. St. sections 8657-8665), which provides, in section 8659: "In all actions hereafter brought against any such common carrier by railroad under and by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." This act establishes the doctrine of comparative negligence in cases of railway employees, by which contributory negligence is not a bar to recov-

ery as at common law, hence the evidence of the last clear chance should go to the jury in either case. In a case where the doctrine of comparative negligence is the law, as testimony to increase damages, while in a case of contributory negligence (which is a matter of defense) at common law, such negligence would bar recovery, but the *superadded* fact constituting the last clear chance, if proven, takes the case out of rule of contributory negligence barring recovery. The evidence was clearly admissible in this case, and the objection to its introduction properly overruled.

[4] The second exception is to the exclusion of evidence to impeach the plaintiff's witness, Payne. The defendant asked the witness, Payne, the motorman of the milk train that ran over the plaintiff, if he had not made a contradictory statement on the day of the accident to Bumgarner, the claims attorney for the defendant, for the purpose of impeaching the witness. When it became manifest that it was the intention of counsel for the defendant to contradict the witness by a prior inconsistent written statement, the learned judge called attention to Virginia Code, section 6216, and refused to permit any questions in reference thereto. The latter part of said section is as follows: "But this section is subject to this qualification, that in an action to recover for a personal injury or death by wrongful act or neglect, no *ex parte* affidavit or statement in writing, other than a deposition, after due notice, of a witness as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case." Any other ruling than that made by the court would annul the statute, and his action was without error.

The other exceptions to the evidence admitted or rejected were very technical, and it does not appear that

the evidence was material to the issue, or prejudicial to the defendant's case, therefore consideration of them in detail is unnecessary, and they are overruled.

The facts in this case, as proven by the plaintiff, are as follows:

On the morning of May 10, 1921, the milk train of the defendant, consisting of a motor car, milk or freight car, and passenger car, left Bluemont, in Loudoun county, Virginia, in charge of Baird, conductor, Payne, motorman, and Weakley, flagman, going east to Washington, D. C. The defendant's line is a single track electric railway (with appropriate sidings and switches) and the movement of its trains is controlled from the dispatcher's office by orders transmitted and delivered in writing at points en route to the conductors of the various trains. On the morning of the accident, conductor Baird received orders at Ashburn to meet No. 1, the passenger train from Washington west, at Herndon, which was their usual meeting point. Baird's orders were in duplicate, one of which he gave to Payne, the motorman, and as he passed the milk car where Weakley was loading milk, he told Weakley, "the regular meet at Herndon on No. 1." This meet at Herndon had been every day since Weakley was running upon the milk train, which he says in one part of his examination was about a month, and in another, six months. The passenger train, No. 1 from Washington west, received similar orders. The movements required by these orders were fully known to the crews of both trains and had been practiced by them every morning, certainly for a month. The track from Herndon east is perfectly straight for a mile. The milk train and passenger train No. 1 were in plain view of their respective motormen when coming to pass each other. The passing of these trains at Herndon had taken place every

day for a month, as follows:   There is a side track at Herndon with a switch at the east and west ends and the milk train runs past the station (stopping at the public road crossing) to a point on the main line east of the eastern end of the side track far enough to let the milk train back on it through the switch, while No. 1 stops and waits further east for the milk train to back into the siding.   When the milk train has backed into the siding, the switch is thrown, and No. 1 passes it going west, stops at Herndon to deliver passengers; the milk train comes out on the main line, backs to the milk depot and loads.   These trains met at this point at 8:25 A. M. on the morning of the 10th of May, 1921, which was a clear day, with the intent of carrying out their usual movements.

Weakley gives in substance the following account of the accident:

When the milk train passed Herndon and stopped, at the safety stop, he jumped off and went to flag No. 1. He had seen No. 1 coming about a mile away, and ran up the east side of the track until he got about the switch where there was a *marsh place* on that side and he had to step up on the track to keep from getting in that.   He ran up the track about ten or fifteen steps and No. 1 was answering his signal.   Before he could get off the track his motor struck him and knocked him down.   He had gone over that switch and flagged No. 1 with Payne behind him running the milk train motor for about a month.   He never looked back to see where his train was as Payne had been protecting him.   When he stepped upon the ties No. 1 was about a half mile away.   He left his train at the safety stop and never looked back nor knew that his train was following him until it struck him and knocked him down.   He was

about a foot from the left rail and was knocked to the left, clear of the motor except his leg.

Payne testified that he saw Weakley running along the side of the track until he stepped upon the ties about forty feet in front of the milk train which was moving about four or five miles an hour; that he was looking out of the side window forwards, to protect his train from No. 1, and backwards, but especially backwards, as it was his duty to receive signals from the conductor when he passed the switch sufficiently far, to back his train into the siding; that he did not see Weakley after he got upon the track and could not have seen him running one foot from the left rail forty feet in front of the motor from his (Payne's) position in the motor; that he could have stopped his train in two or three feet, and when he heard him holler he stopped within four or five feet; that he did not know of anything which he could have done to protect Weakley, except to have seen him by leaning out of the window further; that the movement of the trains and his actions were the same on that morning as they had been every morning for a month, and fully known to Weakley.

[5] It is insisted on behalf of the defendant that as the Federal statute provides for liability in case of injury, resulting in whole or in part from negligence of "common carriers by railroad in interstate commerce, this negligence must be established by direct or circumstantial evidence, as a prerequisite of recovery, and that the doctrine of *res ipsa loquitur* has no application in an action by an employee against a common carrier, under the statute, *supra.*"    *Southern R. Co.* v. *Adams' Adm'x*, 129 Va. 233, 105 S. E. 566, 568.

[6] These contentions appear to be consistent with reason and authority.    The plaintiff's declarations allege that while he was flagging train No. 1 it was the

duty of the motorman to exercise reasonable care not to injure him, and that while flagging No. 1 and intending to return to throw the switch he had the right to assume that the motorman would exercise reasonable care not to injure him, but while not negligent himself, the motorman carelessly and negligently ran the milk train upon him and injured him as alleged. It is an elementary proposition that he who alleges negligence must establish it. This is certainly the rule in Virginia, and the decisions by the Supreme Court of the United States, in cases under the Federal employers liability act, are to the same effect.

In the case of *Patton* v. *Texas Pacific Railroad Co.*, 179 U. S. 663, 21 S. Ct. 277, 45 L. Ed. 361, the court said:

"The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence."
* * * * * * "It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of a half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is not satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which a plaintiff fails in his testimony."

In the case of *Smith* v. *Illinois Cent. R. Co.*, decided

by the circuit court of appeals of the sixth circuit, 200 Fed. 553-555, 119 C. C. A. 33, 35, the court said: "Whether defendant's liability is to be rested upon common law principles or upon the employers liability act no recovery can be had unless the evidence warrants a verdict that the hostler's negligence was a proximate cause of the accident." * * * * * * * * * "The fact that deceased was struck by defendant's engine carries with it no presumption of defendant's negligence, the burden of proving which is on the plaintiff." The negligence of a defendant cannot be inferred from a presumption of care on the part of the person killed. A presumption in the performance of duty attends the defendant as well as the person killed. It must be overcome by direct evidence. One presumption cannot be built upon another. *Looney's Case, supra,* 200 U. S. 488, 26 Sup. Ct. 306, 50 L. Ed. 564."

In view of the law on the necessity of proving the negligence of the employer, the importance of the case requires a careful analysis of the evidence. Weakley testifies that while running on the track, between the rails, and within one foot of the west rail flagging No. 1 he was struck and injured. He admits that he was neither looking nor listening for this train nor exercised any care to protect himself. There is no evidence that it was necessary for him to stand in the tracks to flag No. 1, and the physical surroundings show it was not necessary. He tries to excuse his negligence by the statement that it was the duty of the motorman not to injure him, and he had never been injured before. On cross examination he would have the jury infer that the custom had been for the milk train to remain stationary until he had flagged No. 1. Both Baird and Payne, his witnesses, testified that the milk train was

moving as usual towards No. 1 slowly in order to back into the switch and save time. Thus the leaving of the stop by the milk train was not an act of negligence but a matter of daily practice fully known to him and did not justify Weakley in not exercising reasonable care to protect himself.

Counsel for defendant in his brief alleges, as the negligence of the defendant: "He had, while engaged in furthering the master's interest, been knocked down and run over by the very man, motorman Payne, whose duty it was to look out and protect him. He had the right to presume that the motorman would protect him and see that he was not run over. The motorman had been protecting him in the discharge of the same duty for a month." This contention is based on the following testimony of Baird:

"Q. Where was Payne, the motorman, looking when you heard Weakley holler?

"A. He was watching me.

"Q. Looking back at you?

"A. Yes, sir.

"Q. Not looking ahead?

"A. No."

And on cross-examination motorman Payne was asked:

"Q. Did you see Mr. Weakley at the time your motor hit him?

"A. No, sir.

"Q. Did you fail to do anything that you should have done that morning in discharging of your duties, Mr. Payne?

"A. The only thing I see is that I failed to see that the boy was clear of the track before I ran over him."

Upon this theory or alleged act of negligence "that I failed to see that the boy was clear of the track before

I ran over him," or discharging his duty as motorman in looking for the conductor's signals at the time of the accident, is urged as proof of negligence.

In the case of *Southern R. Co.* v. *Bailey*, 110 Va. 836, 67 S. E. 366, 27 L. R. A. (N. S.) 379, the court said: "We have held in many cases that an engineer, seeing a person upon the track in the apparent possession of all his faculties would have a right to suppose that such a person would get out of the way of the approaching train; in other words, that to see a man upon the track is not necessarily to see that man in a position of danger, because if in the possession of his faculties, and in the exercise of that care which is incumbent upon him, he looks out for an approaching train, he can reach in an instant a place of safety, and the peril of one upon the track cannot, therefore, be known to those in control of the train until it becomes apparent that he is unconscious of his danger, or so situated as to be incapable of self protection, when it becomes the duty of those in charge of the train to do all that they can consistent with their higher duty to others to save him from the consequences of his own act. We have held that the duty of guarding an individual against injury, which the law imposes upon a railroad company, is no higher or greater than that which the individual owes to care for his own safety; that all men know that to be upon a railroad track along which trains are frequently moving is to be in a position of danger and imposes upon the person so exposing himself the obligation to keep a constant lookout for his own protection."

[7] Weakley was on the track where it was not necessary for him to be in discharge of his duties; he was not using his senses for his own protection as required of him by law. It does not appear from the evidence that he had ever performed his duty in this manner

before, nor how he had been protected by the motorman on previous occasions.   He was in a state of continuing negligence, and there is no circumstance in connection with his conduct that day nor previous practice which would suggest to an ordinarily prudent person that provision to protect him against his own negligence was required of the motorman.   "If a plaintiff fails to make out his case, it is not the function, either of the jury, or a court, to make out a case for him by departure from the settled rules of proof resting upon plaintiffs, and drawing conclusions from surmise or conjecture."   *Southern Ry. Co.* v. *Adams, supra.*

[8] The conduct of the motorman in looking back to get signals from his conductor was not negligence *per se,* and plaintiff's evidence furnished no fact, except his injury, from which the jury could infer negligence on the part of the defendant.

In the case of *Looney* v. *Metropolitan Railroad Co.,* 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564, decided before the passage of the Federal employers liability act, the court held:

"In an action for damages for personal injuries   *   * *   *   * *   *   *   *   * the plaintiff must establish the grounds of defendant's liability   *   *   * · * Negligence of defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plaintiff.   There is equally a presumption that the defendant performed his duty." There is less reason for surmise and conjecture in a case where the plaintiff's own want of reasonable care was confessedly the proximate cause of his injury.

: [9, 10] In the case of the *Virginia Iron C. & C. Co.* v. *Hughes,* 118 Va. 731, 741, 88 S. E. 88, 92, the Supreme Court of Appeals of Virginia held the following as established law in this State:   ".It is not negligence to fail

to take precautionary measure to prevent an injury, which if taken would have prevented it, and when the injury could not reasonably have been anticipated and would not have happened but for the occurrence of *exceptional circumstances* * * * *. The first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and the second requisite is that produced it." *Va. I. C. & C. Co.* v. *Kiser, Adm'r*, 105 Va. 704, 54 S. E. 889, and authorities cited; *N. & W. Ry. Co.* v. *McDonald's Adm'x*, 106 Va. 207, 55 S. E. 554; *Recker* v. *Southern Ry. Co.*, 115 Va. 201, 78 S. E. 580. The same principle of law applies to negligence where a person is doing a lawful act. The injury by omission of precaution must have reasonably been anticipated, and must naturally or probably have contributed to the injury.

In the case of *Norfolk & Western R. Co.* v. *Harman's Adm'r*, 83 Va. 553-577, 8 S. E. 251, 258, which it is true was the case of a trespasser, but the rule of self preservation is the same, the court said: "A person so walking upon a railroad track is not free from negligence if he omits to keep watch of the movements of the train, relying upon a rule or custom of the employees of the railroad to give a signal for the moving of the train. The expectation that such signal would be given does not relieve a person in such situation from *constant watchfulness for his safety.*" The expectation of the plaintiff that the motorman would protect him was no excuse for his not being attentive to his own safety.

In the trial court the plaintiff asked for no instruction as to the negligence of the defendant, but during the trial announced that he relied upon the case of *Washington & O. D. Ry.* v. *Warner*, 124 Va. 458, 97 S. E. 799. The injury in that case was the result of a

collision between two trains caused by the combined negligence of the train dispatcher and the motorman of the train which collided with the train that plaintiff was operating. There was evidence of both allegations of negligence on the part of the defendant, and its weight was entirely for the jury. That case could not be authority for the one under consideration. It is necessary for a plaintiff to make out a case by evidence, before the court can apply the proper rule of law to guide the jury in its conclusions.

In his brief the plaintiff cites the case of *C. & O. R. Co.* v. *DeAtley*, 241 U. S. page 310, 36 S. Ct. 564, 60 L. Ed. 1016, as authority to sustain the verdict in the instant case. The facts in that case were that DeAtley was sent ahead to get a report from the telegraph station upon another train. After receiving the information the engineer knew that DeAtley would have to get back on his train while in motion. He ran his train so rapidly that when the plaintiff undertook to board it, he fell and his leg was cut off. With the knowledge of the engineer, the rule of law is well established that the plaintiff has the right to presume that the engineer would exercise reasonable care for his safety and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed until made aware of the danger. There is no analogy between this case and the one under discussion. The engineer was fully cognizant of the fact that the plaintiff intended to board the moving train, and the speed at which he operated his engine was a question for the jury. No knowledge or circumstance was brought to the attention of the motorman that Weakley was not in a safe place.

[11, 12] Another case cited for the plaintiff is the case of *Wilson's Adm'x* v. *Virginia Portland R. R. Co.*,

122 Va. 160, 94 S. E. 347, and the quotation therefrom is the opinion of the court which held that there was sufficient proof in the case to justify the application of the doctrine of the last clear chance. Reiterating the law of the last clear chance is, that the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care *after his peril* was discovered, or should have been discovered, there was in fact a clear chance to save him. On this theory of the case there is also no evidence. The motorman did not and could not see, and if he had there was nothing in his attitude to cause a reasonably prudent person to anticipate that the plaintiff, in full possession of his faculties, would not make two steps to safety from in front of a moving train.

Most careful examination of the evidence in the case does not disclose any evidence or proof of fact upon which the defendant's negligence can be based. It seems from plaintiff's position on the track, with his back to the slowly moving milk train, the front of the motor which was straight, that if he had been struck as he thought he was, he would have been knocked directly in front of the train instead of to the side. It seems highly probably that Peterson's account of the unfortunate accident is true, to-wit, that Weakley stumbled and fell upon the track and in the excitement thought he had been struck. However much human sympathy may incline men to relieve this young man, the courts can only enter up judgments based upon verdicts sustained by proof of negligence on the part of his employer, and there being an entire lack of evidence to sustain the verdict of the jury, it must be set aside, the judgment annulled and this court enter up judgment for the defendant, which is so ordered.

*Reversed.*

# Staunton.

## DALBY v. SHANNON & FLORENCE.

September 18, 1924.

In the report of this case, 139 Va. 488, Prentis and Burks, JJ., should have been noted as dissenting.